**FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - - -X

In re:   SUSSIE MENSAH-NARH,

                                        Chapter 13
                                        Case No.  15-33385 (CMG)

           Debtor.
- - - - - - - - - - - - - - - - - - - - - - - - - - -X

## OPINION

**APPEARANCES:**

Arthur L. Skaar, Jr., Esq.
Attorney for Debtor

COHN LIFLAND PEARLMAN HERRMANN KNOPF, LLP
Mercedes Diego, Esq.
Attorneys for TD Bank

Albert Russo, Esq.
Standing Chapter 13 Trustee

**CHRISTINE M. GRAVELLE, U.S.B.J.**

## INTRODUCTION

This matter comes before the Court by way of a Confirmation Hearing on Debtor, Sussie Mensah-Narh's ("Debtor") Chapter 13 plan (the "Plan").  TD Bank, N.A. ("TD Bank"), a secured creditor holding a second mortgage on Debtor's residence located at 24 Wedgewood Drive, North Brunswick, New Jersey (the "Property"), objected to confirmation of the Plan, which seeks to strip off the second mortgage as wholly unsecured.  The objection of TD Bank is

twofold. First, TD Bank alleges that the actual value of the Property exceeds the balance of the first mortgage against it, leaving equity to secure a portion of the second mortgage, and making a strip off impermissible. Second, TD Bank submits that the strip off is impermissible so far as the mortgage was signed by both Debtor and her non-debtor ex-husband, Steven Mensah-Narh (the "Ex-Husband"). While the Ex-Husband transferred his interest in the Property to Debtor via a post-petition quitclaim deed, TD Bank takes the position that a strip off is not permissible as to the portion of the mortgage securing the liability of the non-debtor ex-spouse.

Before preparing for and appearing at a valuation hearing, the parties requested that the Court first make a determination on the threshold issue of whether a strip off is allowable when a non-debtor spouse, who has quitclaimed his interest in the property, has an underlying obligation secured by the mortgage which the debtor seeks to strip. For the following reasons, the Court finds that such a lien strip is permissible and will schedule a valuation hearing.

## JURISDICTION AND VENUE

The Court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court dated July 10, 1984, as amended October 17, 2013, referring all bankruptcy cases to the bankruptcy court. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (B) and (L). Venue is proper in this Court pursuant to 28 U.S.C. § 1408.

## FACTS AND PROCEDURAL HISTORY

On January 26, 2006, Debtor and her then-husband, Steven Mensah-Narh, executed a second mortgage in favor of Commerce Bank, N.A., encumbering the Property. This second mortgage secured a promissory note in the original principal amount of $75,000, which was

signed by both Debtor and the Ex-Husband. Commerce Bank, N.A. merged into TD Bank on May 31, 2008.

Debtor and Ex-Husband divorced. Though the record is unclear as to the exact timeframe, it appears that sometime before the filing of her bankruptcy Debtor attempted to modify a first mortgage on the Property held by Seterus, Inc. ("Seterus"). According to Debtor, she was advised by Seterus that though she qualified for a mortgage modification, her Ex-Husband did not qualify. According to Debtor, Seterus informed her that if her Ex-Husband quitclaimed his interest in the Property to her, she could qualify for a mortgage modification. While she states that her Ex-Husband agreed to quitclaim his interest, he did not immediately sign the quitclaim deed. There is nothing in the record that indicates that Ex-Husband was required to transfer his interest in the Property pursuant to a divorce decree.

On December 15, 2015, the day before a scheduled sheriff sale of the Property, Debtor filed her Chapter 13 petition. In it she listed the Property with a value of $350,000, of which she stated she owned a portion valued at $175,000. Debtor listed three secured claims against the Property. The largest claim was listed as owing to Seterus in the amount of $388,830.43, secured by a first mortgage. The second largest claim was listed as owing to TD Bank in the amount of $82,590, secured by a second mortgage. Steven Mensah-Narh was listed as a co-debtor for each claim. A third claim was listed as owing to American Express Centurian Bank in the amount of $14,000 for a judgment lien. This last claim is not relevant to the present matter.

Debtor's Chapter 13 Plan called for a cure of approximately $50,000 owed in arrears to Seterus on the first mortgage. It also provided for a strip off of the TD Bank lien and a reclassification of the claim as unsecured under 11 U.S.C. § 1322(b)(2), as there was no equity to secure it.

The confirmation hearing, originally scheduled for February 17, 2016, was adjourned several times. On February 2, 2016 the Ex-Husband executed a quitclaim deed on the Property, with said deed being recorded in the Middlesex County Clerk's Office on February 4, 2016.[1] Since that time, Debtor states that Seterus approved her loan modification, and that she is making the estimated payments required before Seterus formally modifies the mortgage. There has been no application to approve a loan modification or any additional information regarding the terms of the modification. Though Debtor has stated that the modification will greatly reduce her plan payments, no modified Chapter 13 plan has been filed, presumably due to the tentative nature of the modification.

TD Bank filed its objection to the Plan, and the parties entered into a scheduling order with regards to the issues presented in the objection. The parties have been afforded time for submissions, and have appeared for oral argument.

## **LEGAL ANALYSIS**

11 U.S.C. § 506(a)(1) provides, in part, that,

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest... is less than the amount of such allowed claim.

Section 506(a) allows debtors to modify secured claims by "stripping" or "cramming" down the secured portion of the claim to the value of the collateral when the value of the collateral is less than the secured portion. This procedure is also referred to as "bifurcation" of a secured claim. Bifurcation is available to Chapter 13 debtors. *See* 11 U.S.C § 103(a); Nobleman v. Am. Sav. Bank, 508 U.S. 324, 328 n. 3 (1993). But § 1322(b)(2) of the Bankruptcy Code prohibits

---

[1] Debtor has not filed amended schedules reflecting the increased value of her new ownership interest.

bifurcation of a claim secured "…only by a security interest in real property that is the debtor's principal residence…" *See* 11 U.S.C. § 1322(b)(2); Nobleman, 508 U.S. at 332.

The United States Supreme Court explained that § 1322(b)(2) prohibited a Chapter 13 debtor from allowing as secured only that part of a mortgage equal to the value of the principal residence and treating the balance due under the mortgage as unsecured. *See* Nobleman v. Am. Sav. Bank, *supra,* 508 U.S. at 330-31. The Nobleman court found that, if any portion of the mortgage was secured by the principal residence, it could not be crammed down as such treatment would be in violation of § 1322(b)(2). *See* id. at 330-31. In a later opinion, the Third Circuit Court of Appeals held that a wholly unsecured mortgage is not subject to the anti-modification clause of § 1322(b)(2). *See* In re McDonald, 205 F.3d 606 (3d Cir. 2000). In the Third Circuit, a junior mortgage may be crammed down, or "stripped," only if the value of the principal residence is less than the amount due to a senior mortgage holder, leaving no remaining value for the junior mortgage. Id. at 613-14.

There is a relative paucity of case law congruent with the factual scenario before the Court. TD Bank cited to a single, unpublished bankruptcy case relating to the present fact pattern. In In re Fernandez, 2013 WL 5976249 (Bankr. S.D. Fla. Nov. 3, 2013), a Chapter 13 debtor attempted to strip a condominium association lien on a condo which his ex-wife had quitclaimed to him pre-petition. In that case the non-debtor ex-wife had filed a prior Chapter 7 bankruptcy. Three months after the ex-wife filed her petition she quitclaimed the deed to the condo to the debtor, who subsequently filed his Chapter 13.

The In re Fernandez court noted that in the Southern District of Florida, "courts have uniformly held that a debtor may not strip down or strip off a lien if the debtor is not the sole owner of the asset encumbered by the lien." Id. at *1. The court examined Florida law and held

that "the Debtor may be able to strip off the Association's lien to the extent that it secures his obligations to the Association, but the Debtor cannot strip off that portion of the lien that secures [the ex-wife's] outstanding obligation to the Association." Id. at *2. The court found that the ex-wife's ultimate obligation was for the three month period between the filing of her bankruptcy petition and her execution of the quitclaim deed. That case is distinguishable from the present matter, as the condominium association lien was extinguished as to the ex-wife upon the execution and recording of the quitclaim deed. As such, the In re Fernandez court performed no substantive analysis of the ability to strip off a mortgage lien where debtor is the sole owner of an asset pursuant to a quitclaim deed and does nothing to inform this Court's decision.

This Court's own research uncovered only one factually analogous case in which a bankruptcy court held that a debtor could not strip off a second mortgage on a property where her ex-husband was on the mortgage along with the debtor, but had quitclaimed his interest in the home to her after the parties divorced, but prior to bankruptcy. *See* In re Brown, 536 B.R. 837 (Bankr. D. Minn. 2015). That court declined to strip on the basis that the obligation of the husband to the mortgage holder remained on the property even after the quitclaim deed was executed. Id. at 840. According to the In re Brown court, a lien strip was not appropriate because, "*[non-debtor's]* liability to [the mortgage holder] is not a debt matchable to a claim that is allowable or cognizable in the bankruptcy case of a third party to that debt- i.e. the Debtor." Id. (emphasis in original). The court held that the obligation of the ex-spouse could not be considered an allowed claim as to the debtor. The court further relied on § 524(e) of the Bankruptcy Code, which states that a grant of discharge "does not affect the liability of any other entity on, or the property of any other entity for, such debt." 11 U.S.C. § 524(e).

The common nexus of the reasoning in In re Fernandez and In re Brown is that the transfer of the ownership interest from the non-debtor ex-spouse to the debtor does nothing to affect the obligation of the ex-spouse to the mortgage holder. The third party relationship between the mortgage holder and the ex-spouse continues as if no transfer had occurred.[2] Both courts recognize that allowing a lien strip for the debtor obligor would have the effect of also stripping the lien provided by the non-debtor obligor, thus altering the relationship between those two parties.

We agree that the quitclaim deed did nothing to change the Ex-Husband's obligation to TD Bank. Debtor obtained Ex-Husband's interest, but she obtained it subject to the mortgage that secured his obligation. But, she then filed a petition in bankruptcy, which cannot be ignored. With that established, we revisit the language of § 506(a) as applied to her case. The estate's interest in the Property is an undivided, 100% interest not subject to a tenancy by the entirety or a tenancy in common. The fact that the quitclaim deed was executed post-petition is of no relevance, as property of the estate includes "any interest in property that the estate acquires after the commencement of the case." 11 U.S.C. § 541(a)(7); *see also* 11 U.S.C § 1306(a)(1) (Ch. 13 estate also includes property acquired after commencement of case but before case is closed, dismissed, or converted).

The plain language of the Code and the interpretive case law discussed above allows the mortgage to be stripped from the Property if there is no equity to secure even a portion of it. Subject to a valuation hearing, the interest of TD Bank (a single lien securing joint obligations) in the estate's interest in the property (sole and undivided) may be unsecured to the extent that

---

[2] Other contractual provisions, such as a "Due on Sale" Clause, may still affect the relationship. While such clauses were discussed in the moving papers of the parties, we do not find them to be relevant to the present matter.

the value of its interest (the total amount of the debt owed) is less than the amount of such allowed claim.

The only remaining requirement to satisfy § 506(a) would be that which was raised by the In re Brown court - whether Debtor's treatment of the "allowed claim" in the bankruptcy can affect the debt against a third party, in this case, the Ex-Husband. The Code defines a claim as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A). The bankruptcy rules of construction state that a "'claim against the debtor' includes claims against property of the debtor." 11 U.S.C. § 102(2).

The United States Supreme Court held that an *in rem* claim against property of a debtor who had previously discharged his *in personam* liability, remains a claim against the debtor. *See* Johnson v. Home State Bank, 501 U.S. 78, 111 S.Ct. 2150 (1991). The Johnson case was decided in the context of a single debtor who received a discharge on personal liability on promissory notes secured by a mortgage on a property in a Chapter 7. He subsequently filed a Chapter 13, seeking to modify the mortgage through his plan. The mortgagee argued that its mortgage could not be modified because it was no longer a "claim against the debtor" for bankruptcy purposes. The Supreme Court noted that the nature of a mortgage provides a creditor with the ability to enforce the obligation either through the foreclosure process or by suing "to establish the debtor's *in personam* liability for any deficiency on the debt and may enforce any judgment against the debtor's assets generally." Id. at 82 (citing to 3 R. Powell, The Law of Real Property ¶ 467). Though the language of § 101(5) references a "right to payment," the Court found that Congress intended § 101(5) to incorporate the broadest definition of "claim," and that "right to payment" means nothing more nor less than an enforceable obligation. Id. at 83 (*citing*

<u>Pennsylvania Dept. of Public Welfare v. Davenport</u>, 495 U.S. 552, 558-559, 110 S.Ct. 2126, 2130-2131 (1990)).  In light of the dual recovery methods available, the Supreme Court then examined the language and history of the Code in determining that the remaining *in rem* liability constituted a "claim."

Thus, TD Bank holds two "claims" against both Debtor and Ex-Husband pursuant to the mortgage and note- the *in rem* claims against the Property and the *in personam* claims against each party individually.  The <u>Johnson</u> case outlined the distinction between the two types of claims and the two separate recovery methods for each.  That distinction instructs this Court's analysis.

Put simply, the quitclaim deed gave Debtor full ownership of the Property, subject to the *in rem* claim as to the Ex-Husband.  The *in personam* liability of the Ex-Husband remains his separate obligation, and cannot be affected by Debtor's filing.  Since the *in rem* claim as to the Ex-Husband is against property of Debtor, it is also a "claim against the debtor" pursuant to § 102(2) and is subject to modification under the Code.

Section 502 of the Code is entitled "Allowance of Claims," and states, in part, that a proof of claim shall be allowed except to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured."  11 U.S.C. § 502(b)(1).  The *in rem* obligation, which enforceable against the owners of the collateral, is an allowable claim under § 502(b)(1) because it is enforceable against the Property that is solely owned by Debtor.  TD Bank could enforce that *in rem* obligation through a foreclosure action.  This can be contrasted to the *in personam* obligation of the Ex-Husband, which is not an allowable claim because there would be no way to collect from the Debtor or otherwise enforce the obligation against her or her property.

The clear statutory language of §§ 101(5), 102(2), and 502(b)(1), further crystalized by the holdings of the Supreme Court in <u>Johnson</u> and <u>Davenport</u>, lead to the inescapable conclusion that the *in rem* claim as to the Ex-Husband is an "allowable claim" sufficient to trigger the ability to modify pursuant to § 506(a). The proposed lien strip in Debtor's Chapter 13 plan is allowable subject to a valuation hearing. The *in personam* claim against the Ex-Husband remains unaffected. TD Bank may pursue him on the obligation in whatever manner they choose.

As discussed, the <u>In re Brown</u> and <u>In re Fernandez</u> courts note that because allowance of such a lien strip adjusts the relationship between two, non-bankrupt parties, it cannot be allowed. Allowing Debtor's proposed lien strip would deny TD Bank the ability to pursue recovery against the Ex-Husband through the foreclosure process, a recovery method that could potentially be useful if the value of the Property were to increase, or if the senior liens were to be paid down or off. However, the alternative advanced by the <u>In re Brown</u> and <u>In re Fernandez</u> courts ignores the plain language of the Code, which makes clear that any *in rem* obligation as to property of the estate is an allowable claim subject to § 506(a).

There is no statutory language to counter the numerous directives of the Code that have led us to this ruling. The <u>In re Brown</u> court cites to the language of 11 U.S.C. § 524(e) which states that, "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." Our decision is consistent with this principle. Further, the <u>In re Brown</u> court found § 524 applicable because it held that the ex-husband was an entity whose claim would be affected by the discharge in that the mortgage holder would not be able to foreclose against him. *See* <u>In re Brown</u>, 536 B.R. at 847-48. But, courts in this district have held that a Chapter 13 debtor's ability to strip off a wholly unsecured mortgagee lien on a principal residence is not contingent upon discharge, but is instead effective upon completion of

the debtor's obligation under his plan. *See* In re Scotto-DiClemente, 459 B.R. 558, 556 (Bankr. D.N.J. 2011) (recognizing "discharge" and "completion of plan payments" as two separate and distinct events, and noting that fulfillment of plan obligations does not always result in discharge). We agree with this approach, and therefore find that the discharge does not affect the liability of parties. Any effect would be the result of the confirmed and completed plan, not the discharge. We are unpersuaded by any argument that § 524(e) provides a statutory counterpoint to those sections of the Code on which we rely.

This ruling comports with the primary objectives of the Code. Many debtors come before the bankruptcy court seeking a fresh start as the result of a divorce. A house is usually one of the primary assets of a divorcing couple and is usually titled and mortgaged in the name of both spouses. While equitable distribution may require the vesting of title to the marital residence in one spouse, it does not affect a mortgage. Other than refinancing the mortgage in the name of a single spouse or paying it off, the only way to modify the mortgage is through a bankruptcy filing.

Prohibiting lien stripping in situations where both mortgagees are not joint debtors would essentially preclude divorced debtors from availing themselves of the ability to lien strip - a key feature of Chapter 13 bankruptcies. Divorced spouses may not file a joint petition in bankruptcy. *See* 11 U.S.C. § 302. Debtors who choose to modify a lien likely would have to convince an ex-spouse to file simultaneously, attempt to consolidate the cases, and work together in a 3-5 year Chapter 13 plan in order to obtain a lien strip. Even if it were possible, it is not practical or workable. Preventing a divorced debtor from obtaining all of the benefits of a bankruptcy, or forcing that debtor to perform herculean feats to do so is not equitable, and, in light of the clear language of the Code, is not necessary.

## **CONCLUSION**

For the reasons stated above, the Court finds that it is permissible through a Chapter 13 plan for a debtor to strip a lien on a primary residence that is wholly unsecured where (a) the debtor is the sole owner of the property and; (b) a non-debtor ex-spouse is liable on the lien which debtor seeks to strip.  A valuation hearing will be scheduled to address TD Bank's remaining objection to confirmation.


Dated: September 23, 2016                           /s/Christine M. Gravelle
                                                                        United States Bankruptcy Judge